```
1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF ILLINOIS
2

3    UNITED STATES OF AMERICA,)
                             )
4              PLAINTIFF, )
                             ) CRIMINAL ACTION
5         VS.               ) FILE NO. 20-30046
                             )           21-30009
6                           )
     RANDY S. BULL,          ) TRANSCRIPT OF
7                           ) PROCEEDINGS
                DEFENDANT. )
8    _____)

9

10             BEFORE THE HONORABLE COLLEEN LAWLESS
             Tuesday, December 12, 2023, 11:16 a.m.
11                     Springfield, Illinois

12
     APPEARANCES:
13
          FOR THE GOVERNMENT:          TANNER JACOBS
14                                     ASSISTANT U.S. ATTORNEY
                                       100 NE Monroe Street
15                                     Peoria, Illinois  61602

16        FOR THE DEFENDANT:           KARL BRYNING
                                       ASSISTANT FEDERAL DEFENDER
17                                     401 Main Street #1500
                                       Peoria, Illinois 61602
18

19

20             DEBRA M. THORNBURG, CSR, RPR, CRR
                FEDERAL OFFICIAL COURT REPORTER
21                 UNITED STATES COURTHOUSE
                    100 NE Monroe Street
22                 PEORIA, ILLINOIS 61602

23

24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
25   PRODUCED BY CAT
```

1      P R O C E E D I N G S

2          THE COURT:  Thank you, everyone.  We are on the

3      record on two cases today, the first one being 20-cr-30046.

4      Also 21-cr-30009-02, both United States of America v. Randy

5      Bull.  We have present on behalf of the Government -- we have

6      the AUSA Tanner Jacobs.  We have the defendant present in

7      person along with his counsel, Assistant Federal Defender Karl

8      Bryning.

9          We also have present here today United States

10     Probation Officer who prepared the Presentence Investigation

11     Reports in this matter, and his name is Mike Murphy.

12         So good afternoon, everyone, and we're set here

13     today for a sentencing hearing.  Now, before -- one second.

14     I apologize.  Now, before I address the defendant personally,

15     I will go through a short procedural history as to how we

16     got here and where we are, so in 20-cr-30046, Mr. Bull

17     appeared before United States Magistrate Judge Karen McNaught

18     on May 25, 2023 and plead guilty to Count 1 of a single-count

19     indictment charging Distribution of 50 Grams or More of

20     Methamphetamine, in violation of 21 United States Code Section

21     841(A)(1) as well as 841(B)(1)(a).

22         On that same day, the defendant plead guilty to four

23     counts of a 12-count indictment pursuant to a written plea

24     agreement under Federal Criminal Rule 11(C)(1)(c), and Count 1

25     charged Conspiracy to Commit Escape of Prisoners in custody of

Institution, in violation of 18 United States Code Section
371.

Now, what I want you to know, sir, is before this,
and then the -- I apologize. Hold on one moment.

Now, in preparation for today's hearing, I have
reviewed the revised Presentence Investigation Reports, the
Government's sentencing commentary, the defendant's sentencing
commentary. I've also reviewed Mr. Bull's motion to dismiss
the information charging prior offense under 21 United States
Code Section 851, the Government's response to that motion as
well as the defendant's reply.

Now, before we go forward, Mr. Bull, in all of my
cases in which there is sentencing, I address the defendant
personally. I know you are represented by very good counsel
who has explained to you what we're going to do here today,
but I like for defendants to hear it from me personally.

So before we begin, I'll take this time to advise
you that under the Sentencing Reform Act of 1984, the United
States Sentencing Commission has issued guidelines for judges
to consider when sentencing someone in a criminal case. Those
sentencing guidelines are merely guidelines, and they are not
binding on the judges.

However, I am still required to calculate what the
proper guideline sentencing range is and to consider that
range along with other factors at the time of sentencing.

1    Now, in this case there are multiple objections, so I'm going

2    to hear those objections, take any evidence that is necessary

3    and rule on those objections.

4            After doing so, I will then make the proper

5    calculations under the guidelines and determine what the

6    guideline range is.  I will listen and consider the arguments

7    presented by the Government as well as your attorney as it

8    relates to sentencing, and I will listen to any statement that

9    you care to make to me.

10            After that, I will consider whether a guideline

11   sentence is appropriate after considering whether to vary

12   upward or downward from the guideline, and I will consider all

13   of the sentencing factors contained in 18 United States Code

14   Section 3553(a) to determine whether I impose a guideline

15   sentence or a nonguideline sentence.

16            Do you understand what's going to happen here today,

17   sir?

18            THE DEFENDANT:  Yes, ma'am.

19            THE COURT:  All right.  Now, throughout this

20   proceeding you can speak to your attorney at any time.  Do you

21   understand that?

22            THE DEFENDANT:  Yes, ma'am.

23            THE COURT:  And I'm going to be asking you a series

24   of questions today, and I need to make sure that you

25   understand what I am asking you, so please make sure if you do

1    not understand something that I have said, that you tell me

2    that and I can repeat it.  I can rephrase it.  You can confer

3    with your attorney.  Do you understand that?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  All right.  So we'll start with what I

6    think is the best course, is to go with the motion to dismiss

7    argument first.

8              Should we do that first, Mr. Jacobs?

9              MR. JACOBS:  That's fine, your Honor.

10             THE COURT:  All right.  We'll start with that, so

11   the motion to dismiss was filed by the defendant.

12             So Mr. Bryning, you can go ahead.

13             MR. BRYNING:  Judge, would you prefer I stay seated

14   or go up to the mike?

15             THE COURT:  So in my courtroom, you can be wherever

16   makes you comfortable, so you can stand and present, you can

17   stay seated.  You can come to the podium.  It's up to you.

18             MR. BRYNING:  Okay.  Thank you.  So your Honor, I

19   know this case has been briefed quite a bit.

20             THE COURT:  It has.

21             MR. BRYNING:  A lot of paper here we have, but the

22   Government -- the reply to the Government's response is what I

23   think is best to he can focus on in terms of this argument.

24   I've done my best to lay that out as clearly as possible.

25   Essentially what it comes down to is that the definitions of

1  both home invasion and conspiracy to commit murder are broader

2  than the definitions that the federal government uses.

3  Those definitions are overly broad and therefore

4  cannot be used to enhance this statutory mandatory minimum

5  from 10 years to 15 years under Section 851, so I think that's

6  the clearest statement of our argument, and I'm not at this

7  time into the categorical approach, the modified categorical

8  approach.

9  All of that, I think that's all been laid out in the

10  briefing fairly well, but the bottom line here is that those

11  definitions, the definitions that are used in federal, are

12  being used -- it's an attempt to fit state definitions into a

13  federal framework, and that federal framework can't accept

14  definitions that are broader because they would bring in more

15  conduct than it was intended by the federal legislation, and

16  that's exactly what's being done in this case in the two --

17  and just in terms of the 851 in terms of what's been filed by

18  the Government to support 851.

19  Initially I think one was filed, one prior was

20  alleged, and then another prior was added by the Government,

21  although they are only seeking an enhancement from 10 to 15.

22  It's like -- I think it's an alternate theory of one of these

23  may be enough to enhance.

24  Our position is that neither one of them are, and

25  then, of course, that position is similar to the argument that

1   we will then make in terms of the Career Offender Guideline as

2   well, so that's the -- that's the essence of it, your Honor.

3           THE COURT:  All right.  Thank you very much.

4           MR. BRYNING:  Thank you.

5           THE COURT:  Mr. Jacobs?

6           MR. JACOBS:  Certainly, your Honor.  I don't

7   disagree with what Counsel said in terms of how we ultimately

8   have to try to figure this out in terms of using the

9   categorical approach.  That's absolutely correct, but what

10  we're failing to -- or I should say what counsel and the

11  defendant are failing to acknowledge is that let's start with

12  the home invasion.

13          There's not a single case that they've cited in

14  which there was not physical contact or contact that overcame

15  someone's will in any of those cases that caused the emotional

16  otherwise injury.  The reply that Counsel filed to our

17  response, that basically states, well, even if we accepted

18  there's physical contact, it's not enough to overcome that

19  injury, and they also state that we don't have to look at the

20  jury instructions for that determination if there even has to

21  be physical contact.

22          The Government obviously agrees that because, 1, the

23  Supreme Court in Erick, or Warick, didn't say, in fact, that

24  there had to be no contact at all.  That was a Fourth Judicial

25  Circuit case and only a fourth judicial circuit case that has

1    said that.  The Supreme Court of Illinois has not weighed in

2    on that specific point.  In fact, the promulgation of the jury

3    instructions themselves have not changed since 2016 when

4    Dorsey was decided.

5           In fact, they have changed in a lot of other ways.

6    In fact, the different portions of assault and different

7    definitions under other subsections have been, in fact,

8    modified or changed with the law but they have not.  The

9    Courts have not found a reason to update that jury instruction

10   which says, yes, injury can be physical, emotional or mental,

11   but it has to have physical contact involved if it's the

12   result of physical contact, so we start there.

13          Then again, if we look to Justice Scalia's

14   statements, I believe it's in Stoklin, which basically says it

15   has to be enough to overcome someone's will, punching, biting

16   or otherwise, and the example given by defense counsel was

17   sitting on someone's lap, which actually sitting on someone's

18   lap in that case in Warick, in placing their hand against that

19   young victim's mouth.  It's a lot more than simply sitting

20   there and just saying oh, you're okay.

21          What we've got in every single one of those cases is

22   the overcoming of that, is physical contact, is force, and I

23   don't think there's been a single case in which there isn't

24   actual force of someone in the house that causes that

25   physical, mental or emotional trauma to that victim.

1          If we turn to the conspiracy to murder, I think it's

2     pretty clear, based on the Government's briefing, there's only

3     one way in which to commit conspiracy to commit murder, and

4     that's intentionally and knowingly.  You cannot conspire, and

5     I don't think there's any argument by the defendant that you

6     can conspire recklessly.  You have to intentionally intend to

7     kill someone by conspiring to commit to kill them.

8          The words themselves define the action.  Not only

9     that, but the actual conspiracy to commit murder charge, the

10    First Degree Murder charge, actually has a breakdown

11    underneath the jury instruction which it says you can't use

12    the reckless intention stuff there.  It's supposed to be for

13    the intentional either causing great bodily injury, the

14    violent action or the actual death itself that causes the

15    death, much like the malice aforethought language within the

16    federal definition of First Degree Murder because we believe

17    they match up both under the enumerated clause for the

18    conspiracy to commit murder portion and because we believe

19    that they match up with the attempted use or use of violence

20    portion under 3559.  We believe that both of them do, in fact,

21    meet the definitions and do not exceed them for the federal

22    definitions.  Thank you.

23          THE COURT:  Thank you very much.

24          Mr. Bryning, I would like your argument as it

25    relates to whether the physical contact in question changes

1    the home invasion.  I know you're saying it's overly broad

2    under any circumstance.  Is that the defendant's position?

3         MR. BRYNING:  The defendant's position is that

4    Illinois home invasion includes psychological or emotional

5    trauma.

6         THE COURT:  Uh-huh.

7         MR. BRYNING:  But it doesn't have to be specifically

8    caused by that trauma, so I think in that respect the

9    definition in Illinois is broader than the federal

10   definition.

11        THE COURT:  Okay.  All right.  Now, as it relates to

12   the remaining objections, do you want to go through -- let's

13   go through those objections so we can handle all of that and

14   then I can take a break to then make sure that I have the

15   proper calculation of guideline based on that, so I believe

16   that would handle, then -- let's go through the objections.

17        MR. BRYNING:  Your Honor?

18        THE COURT:  Yes.

19        MR. BRYNING:  If I may, there's -- I think there's a

20   couple of corrections to the presentence report, the final

21   presentence report, paragraph 26 and 34 regarding obstruction

22   of justice that were resolved.

23        THE COURT:  And that would have been the third

24   objection, correct?

25        MR. JACOBS:  I believe that's correct.  Yes,

1  correct.  There were three objections.

2          THE COURT:  There were three objections, the first

3  one being to paragraph 2, 4, 36, that's having to do with

4  prior convictions which we've just argued.  Okay.  The second

5  being the drug quantity, relevant conduct.  Let's try to go in

6  order just so -- because I do understand, it's my

7  understanding that the third objection has been resolved?

8          MR. BRYNING:  Yes.

9          MR. JACOBS:  Yes.

10          THE COURT:  Okay.  So let's go to the second one

11  then, so second objection being the drug quantity and relevant

12  conduct.  Do you wish to be heard on that?

13          MR. BRYNING:  Yes, just briefly, your Honor.

14          THE COURT:  Go ahead.

15          MR. BRYNING:  It is Objection No. 2, your Honor?

16          THE COURT:  Yes, it is.

17          MR. BRYNING:  Okay.  Your Honor, I won't go and read

18  through everything that's already been summarized in the

19  presentence report objection.  I think that accurately

20  summarizes our argument.  However, there are a couple of

21  things that I would add.  In relation to the statements of Mr.

22  Bull at the time of arrest, I think it's tempting for any

23  person who's arrested to do what they hope the police want or

24  to tell the police what they want to hear.

25          And essentially here I think the statements related

1    to relevant conduct, if you look at the actual paragraphs in
2    the presentence report, and I'll see if I can find those right
3    here, paragraph, I think, 21 and 22 -- okay.  In paragraph 20,
4    they note that Mr. Bull stated that he also uses ice
5    methamphetamine, and then in 21 -- in 21 Mr. Bull states that
6    he obtained it from individuals known as Fat D, Fat and D.

7         I mean, if you read through this, it doesn't sound
8    quite credible to begin with.  You've got first names of
9    people, and we see in the presentence report, and the same
10   goes for paragraph 22.  It's just kind of throwing numbers and
11   aliases up there, and many times in Presentence Investigation
12   Reports we'll see -- when it comes to statements by the
13   defendant or statements by family members, we'll see at the
14   end uncorroborated.  That's exactly what these are.  These are
15   uncorroborated statements.

16        Now, I know the Government's arguing that he's the
17   person who said them and so therefore he corroborated his own
18   statements.  He's in the best position to know.  I understand
19   that's the argument, but I think when a person is arrested
20   this side of the road, they've been arrested in a controlled
21   buy, I think in this case Mr. Bull was basically auditioning
22   for that spot.

23        He was puffing up, trying to make himself look more
24   important than he was.  I think you have further evidence for
25   that in this case because the first controlled buy yielded

1    what?  72 or something grams, 71 point something grams.  The

2    second buy was rock salt.

3              I mean, these enhancements and whether it's a

4    statutory enhancement or a guideline enhancement or even the

5    mere difference between actual methamphetamine as opposed to

6    mixture and substance containing methamphetamine are aimed at

7    penalizing the worst of the worst, are aimed at penalizing

8    drug kingpins.

9              There's not a lot of drug kingpins out there that

10   are pitching rock salt into somebody's lap, so this is an

11   overstatement.  This is puffery, and I think it even on its

12   face goes beyond being credible, so that's the essence of our

13   argument, your Honor.

14             THE COURT:  Thank you very much.

15             Mr. Jacobs?

16             MR. JACOBS:  Yes, your Honor.  The defendant in his

17   objection notes that 7th Circuit has demanded more than simple

18   hearsay for enhancements on guidelines.  However, as the

19   Government specifically responded and as I would note here,

20   the defendant's statements are, in fact, not hearsay and, in

21   fact, the reason that they're not hearsay is because when the

22   rules were written and as they've been handed down, when

23   someone makes a statement against their own interest, we

24   believe them to be reliable statements, just as we are to

25   believe here.

1        When the defendant gets up, he's gonna ask you to

2   believe everything that he's saying in terms of when he makes

3   his statement in allocution today and each and every other

4   time he speaks he's gonna ask you to take those as reliable

5   statements.  Those are his own self-serving statements.

6   However, when the opposing party uses them, they no longer

7   become hearsay.  They become palpable evidence that can be

8   used against him.

9        If I were to bring those same statements up against

10  him at trial to show that he intended to sell methamphetamine

11  for the purpose of doing so and that he had in the past, those

12  would be substantive evidence statements that could be used

13  for the jury to consider, and they would not even be

14  considered hearsay.  Therefore, they are not unreliable

15  hearsay because they are not hearsay to begin with.

16       The defendant, moreover, is the one that said

17  them.  He is the most reliable party to know exactly how

18  much he's been selling and how much he's obtained to sell.

19  With that, your Honor, while the arguments by defense

20  counsel may be arguments for why he should receive a variance

21  or below-guideline sentence, they are not arguments that

22  should specifically move this Court to change the guideline

23  calculations.

24            THE COURT:  Thank you very much.

25            MR. BRYNING:  Your Honor, may I respond briefly?

1        THE COURT:  Yes, you may.

2        MR. BRYNING:  Our argument is that these were

3    self-serving statements and that you can't have it both ways.

4    You can't say, well, Mr. Bull's credible on things that we

5    want him to be credible on but he lacks all credibility on

6    things that increase his sentence, that we don't want him to

7    be credible on, so our argument isn't that this was hearsay.

8    It's obviously statements of a defendant, which would not be

9    hearsay, but that it's not reliable and it was self-serving at

10   that time.

11       THE COURT:  Thank you very much.  All right.  And

12   then the third objection is the obstruction of justice

13   objection, which is my understanding is -- is it being

14   withdrawn or resolved by the Government withdrawing the

15   enhancement?

16       MR. JACOBS:  I believe it's the latter, your Honor,

17   in that the Government is no longer moving for that

18   enhancement to be included by the Court and we're asking that

19   you not consider the plus 2 enhancement under construction

20   because he is, in fact -- his culpability is, in fact, being

21   taken on the other case.

22       THE COURT:  That is correct.  So I will note that

23   when doing the calculations, and then the last one is the

24   objection as relates to career offender.

25       MR. JACOBS:  I don't know if defense counsel

1    disagrees, but those are very similar and have been briefed

2    similarly because of the categorical approach as to the 851s.

3    The Government would stand on its briefing based on those and

4    the arguments made already as it relates to those specific

5    ones.

6              THE COURT:  Same for the defendant?

7              MR. BRYNING:  The defense will as well.  The only

8    thing I would add is the argument that I just made about these

9    being for the worst of the worst.  The guidelines are -- the

10   argument for the guidelines is somewhat different.  They're

11   the same in terms of the definitions being overbroad in

12   Illinois and not being applicable therefore to the federal

13   law, but, yes, that's the argument that I was trying to bring

14   out before as well.

15             THE COURT:  All right.  Thank you very much.  I'm

16   gonna take a short recess as relates to the calculations, and

17   then I'll come back out.  Thank you.

18             (Break taken from 1:57 p.m. to 2:12 p.m.)

19             THE COURT:  All right.  We are back on the record in

20   20-cr-30046 as well as 20-cr-10009-02.  I've had the

21   opportunity to review and consider, obviously, this was fully

22   briefed, but I did want to hear from counsel as relates to

23   some of the arguments as well as the objections before making

24   the proper calculations under the sentencing guidelines, so I

25   have review the motion to dismiss and considered the arguments

1    of counsel.

2            Now, as it relates to, obviously, two different

3    offenses and I believe that the -- under the relevant

4    definition it is clear that the conspiracy to commit murder

5    qualifies as a violent felony and so I don't believe that is

6    overly broad as it relates to the arguments made by counsel

7    for the defendant today.

8            And I want to make sure we go through and I think

9    the Elder case in the 7th Circuit is relevant here that a

10   state crime may qualify as a predicate conviction only if the

11   elements of the state crime mirror or are narrower than the

12   elements of the generic crime.

13           Also, the Elder case, the 7th Circuit 2018 states

14   that if state law defines the offense more broadly than the

15   federal statute, the prior conviction doesn't qualify as a

16   predicate offense even if the defendant's conduct satisfies

17   all of the elements of the federal offense, so as I've

18   considered this, the -- I believe the Government's argument as

19   to home invasion and when looking at the cited sources,

20   obviously People v. Dougherty from the Fourth District,

21   Illinois case, stated that while physical conduct can

22   accompany psychological trauma, the Court clearly found that

23   psychological or emotional trauma standing alone could support

24   a conviction for home invasion.

25           I mean, so under that circumstance, I think it is

1    conceivable that one can be convicted of home invasion without

2    the -- without the necessary physical force that is required.

3    So based on that, I do believe that the home invasion does not

4    qualify as a prior conviction so I am granting in part the

5    motion to dismiss and denying it in part as relates to the

6    851.

7             So that should also resolve the first objection as

8    well as the fourth objection, and the third objection

9    contained within the PSR has already been resolved. We're not

10   adjusting it for the obstruction of justice or enhancing for

11   the obstruction of justice.

12            As 2 relates to the statements made by the defendant

13   at the time of arrest, I believe those were sufficiently

14   reliable for the Court to consider in this case, so I'm

15   overruling that objection.

16            Are there any further objections that I need to

17   address that I haven't as it relates to my rulings, to the

18   Government?

19            MR. JACOBS: I think we need a clarification, your

20   Honor. When you say the first and the fourth, so you've

21   resolved the 851. We didn't talk about career offender, and

22   then I don't believe you've actually stated specifically how

23   you have found as to career offender. I think I understand

24   what you mean, but I don't think you've actually stated that

25   specifically.

1   THE COURT:  Okay.  So as it relates to the -- and

2   let me go directly to that.  The defendant through the -- on

3   the fourth objection objects to the qualification of both of

4   his prior convictions as career offender.  I am encompassing

5   the same ruling as relates to the motion to dismiss the

6   indictment, so I do not believe there are two offenses to then

7   get to the career offender status and so does that

8   sufficiently identify it?

9   MR. JACOBS:  That is perfect, your Honor.  Thank

10  you.

11  THE COURT:  No problem.  And thank you for

12  requesting that clarification.  So after my rulings, the

13  defendant's total offense level in the -- and I'm gonna refer

14  to these cases as the 20 case and the 21 case going forward so

15  I don't have to keep saying the full case number.  So in the

16  20 case Defendant's total offense level after ruling on the

17  objections would be 31 with a Criminal History Category of V.

18  I believe the defendant has 11 criminal history

19  points that puts us in a Category V.  Under that, it would be

20  the guideline provision with a total offense level of 34,

21  Criminal History Category of V.  The guideline would be 268 to

22  210 months.  Statutory provision for imprisonment would be 10

23  years to life.  Supervised release under the statute 5 years.

24  Guideline provision would be 5 years.

25  The defendant is ineligible for probation under the

1  20 case.  The fine under the statute would be 10 million.  The

2  fine range under the guideline would be $3,000 to $500,000.

3  Restitution is not an issue in this case, and the special

4  assessment would be $100.

5          Mr. Jacobs?

6          MR. JACOBS:  I believe you said statutory penalty

7  would be 10 years.  Because you found at least one of them to

8  qualify as an 851 predicate, it's 15.

9          THE COURT:  I apologize.  It's 15.  You are correct.

10  Is that correct?  Do you agree with that?

11          MR. BRYNING:  Yes, Judge.  I agree to that to the

12  extent --

13          THE COURT:  That that is the proper calculation.

14          MR. BRYNING:  I don't want to be accused of having

15  waived any issue.

16          THE COURT:  You did not waive any issue when I said

17  do you agree with it after considering my rulings that the

18  proper calculation for the statutory imprisonment would be 15

19  years to life.

20          MR. BRYNING:  Yes, based upon your ruling.

21          THE COURT:  Based upon my ruling without waiving any

22  of the objections made prior to the rulings.  So under that I

23  believe those calculations are accurate, and we will then move

24  to the calculations as it relates to the 21 case and so Counts

25  1, 2, 3, and 7 are grouped for guideline calculation purposes.

According to the PSR, Mr. Bull's offense level would be 13 with a 2-level reduction for acceptance of responsibility.

That would take us to a total offense level of 11. Criminal history score of 11, criminal history category of V. Statutory maximum term of imprisonment on Count 1 is 5 years. As to Count 2, maximum term is 5. Same for Count 3 as well as Count 7. The guideline range with a total adjusted offense level of 11 with a Criminal History Category V results in a Advisory Guideline Range of 24 to 30 months.

According to the statute, the Court may impose a supervised release of not more than 3 years per count. Guideline range would be 1 to 3 years per count.

Because the defendant is eligible for a term up to 5 years probation per count under the statute but according to the guideline provision Defendant is not eligible for probation because he is in Zone D, the statutory maximum fine is $250,000. The fine range under the sentencing guidelines is 4,000 to 40,000. Mandatory special assessment of $100 per count is statutorily required to be imposed.

Restitution in the -- I want to make sure we have this correct. Restitution in the total amount of $2,292.14 may be ordered in this case joint and several with the co-defendants. Is that a correct --

MR. JACOBS: That's correct, your Honor.

THE COURT: And it would be due and owing to the

1   Sangamon County Sheriff's Office in Springfield.

2             MR. JACOBS:  That is also correct.  We'd have to

3   check if it's been paid already because I know at least two

4   other individuals who were already sentenced may have made

5   payments.

6             THE COURT:  All right.  Those are my findings.

7             Any objections to that?

8             MR. BRYNING:  No, your Honor.

9             MR. JACOBS:  Only, again, not to waive any of the

10  objections already made and already made by counsel, we do

11  have a legal objection, obviously, to the finding of

12  noncareer, but based on your Honor's ruling, no.

13            THE COURT:  Thank you very much.  So at this point

14  is either side going to present any evidence?

15            MR. JACOBS:  The Government does not intend to, your

16  Honor.

17            MR. BRYNING:  Your Honor, the defense filed a

18  sentencing commentary and attached to that commentary are a

19  number of letters.  Other than that, the defense is not

20  presenting any evidence.

21            THE COURT:  All right.  Thank you very much.  I

22  appreciate that.  I have reviewed those in preparation for

23  today's sentencing.  Then we will go to the conditions of

24  supervised release.

25            Mr. Bull, have you reviewed the conditions of

1    supervised release?

2                    THE DEFENDANT:  Yes, ma'am.

3                    THE COURT:  All right.  And I will pull those out.

4    And you've reviewed them, and they are jointly on one

5    document.  Is that correct for everybody?  There's only one?

6                    MR. BRYNING:  Yes, your Honor.

7                    MR. JACOBS:  Yes.  Sorry, your Honor.

8                    THE COURT:  They're in the two different cases.

9    They're not separate.

10                   MR. JACOBS:  Yes.

11                   THE COURT:  I just wanted to make sure we're only

12   talking about one because I only have one in front of me.  So

13   conditions of supervised release for both the 20 and 21 case

14   are on the same document.

15                   Mr. Bull, have you had a sufficient period of time

16   to review the conditions of supervised release?

17                   THE DEFENDANT:  Yes, ma'am.

18                   THE COURT:  Have you had a sufficient period of time

19   to confer with your attorney not only about the conditions of

20   supervised release but also the Presentence Investigation

21   Report?

22                   THE DEFENDANT:  Yes, ma'am.

23                   THE COURT:  And are you satisfied with Mr. Bryning's

24   presentation of you throughout these proceedings?

25                   THE DEFENDANT:  Yes, ma'am.

1     THE COURT:  All right.  Now, as relates to the

2 conditions of supervised release, have you reviewed them in

3 detail?

4     THE DEFENDANT:  Yes, ma'am.

5     THE COURT:  And I see that your signature is on the

6 fifth page, the final page of this document.  Is that your

7 signature?

8     THE DEFENDANT:  Yes, ma'am.

9     THE COURT:  And I also see that next to each

10 condition are your initials.  Did you initial?

11     THE DEFENDANT:  Yes, ma'am.

12     THE COURT:  Did you ask all of the questions that

13 you wanted to ask to your attorney as it relates to the

14 conditions of supervised release?

15     THE DEFENDANT:  Yes, ma'am.

16     THE COURT:  And did he appropriately respond to you

17 as relates to those questions?

18     THE DEFENDANT:  Yes, ma'am.

19     THE COURT:  All right.  Do you have any objections

20 to the conditions of supervised release?

21     THE DEFENDANT:  No, ma'am.

22     THE COURT:  Do you understand that if you -- if you

23 say you do not have an objection at this time to the

24 conditions of supervised release, you may be waiving that

25 objection going forward?

1            THE DEFENDANT:  Yes, ma'am.

2            THE COURT:  All right.  Mr. Bryning, do you have any

3       objections on behalf of your client as to the conditions of

4       supervised release?

5            MR. BRYNING:  No, your Honor.

6            THE COURT:  Mr. Jacobs, by the Government?

7            MR. JACOBS:  No, your Honor.  Thank you.

8            THE COURT:  All right.  Now, Mr. Bull, do you waive

9       me reading the conditions of supervised release out loud to

10      you?

11           THE DEFENDANT:  Give me one second.

12           MR. BRYNING:  He wants to ask me a question.

13      (Discussion held off the record between counsel and Defendant)

14           MR. BRYNING:  Thank you, your Honor.

15           THE COURT:  All right.  So my question to you, sir,

16      is did you want me to read the conditions of supervised

17      release out loud to you right now?

18           THE DEFENDANT:  No, ma'am.

19           THE COURT:  All right.  Then I will take that

20      assuming counsel is waiving my oral reading of the conditions?

21           MR. JACOBS:  The Government is, your Honor.

22           MR. BRYNING:  Defense is, Judge.

23           THE COURT:  All right.  Then I will hand the

24      conditions of supervised release to Madam Clerk, and we can go

25      forward with argument.

1          MR. JACOBS:  Certainly, your Honor.  May it please

2     the Court?

3          THE COURT:  Yes, you may.

4          MR. JACOBS:  Your Honor, as I did in my sentencing

5     commentary, I'm gonna lump the arguments together.  We have an

6     agreed-upon sentence as to the second case if your Honor

7     accepts it, that being one year consecutive to whatever your

8     Honor gives on his 20 case, and if it's okay I will also refer

9     to them as the 20 and 21 case.

10          THE COURT:  Yes.

11          MR. JACOBS:  In the 20 case, your Honor, obviously

12     it's a drug-dealing case.  It's an individual who has decided

13     that he is going to deal poison to other people, a poison that

14     is incredibly addictive and does, in fact, cause the downfall

15     and violence in the community and the downfall of a lot of

16     different lives.

17          Unfortunately, drug dealing and drugs in general

18     affect a lot of other crimes.  So when an individual decides

19     to commit drug dealing, they're, in fact, contributing to

20     those other crimes because they are contributing to another

21     person's addiction.  And that's exactly what this defendant

22     decided he would do even though he, as he has stated

23     throughout the PSRs, has a drug problem himself.

24          So even knowing that, even knowing the collapse that

25     that can cause to someone's family, even know what it can do

1  to someone and what it can do to their lives, he decided that,

2  no, I'm going to continue that cycle.  I'm going to continue

3  to push that poison into my community.  I'm going to be a

4  danger to others by doing so.

5       Now, once he was arrested, once he was caught, he

6  was in a facility that was supposed to make sure that no one

7  else can be harmed by him and instead he took that

8  opportunity, he took the opportunity allowed because there

9  were a lot more restrictions within the jail that didn't allow

10  as much contact between guards and prisoners, and he went

11  ahead and he decided that he would move in, kick another

12  person out of their cell, join Jim Russwinkel and attempt to

13  break out of jail.

14       Now, he didn't do that by just punching a hole in

15  the window.  No, they agreed that they would bring in hack

16  saws, blades and crow bars and prybars and tow straps and a

17  litany of other things that are incredibly dangerous in a

18  jail, let alone a confined space in an overly confined

19  environment that you have there.

20       We had Shawshank Redemption moment there where

21  inside a book you actually had a blade itself that had been

22  cut into the book and set in there.  Within the defendant's

23  own shoe there was a large piece of metal that could have

24  easily been used as a weapon and then, of course, there was a

25  note that the defendant left of things that they needed,

1    people he would contact and the note in which he specifically

2    noted that they were going to jump out the window and that

3    they were leaving because he believed that he had some right

4    to do so.

5        More over, your Honor, if you look past just the

6    circumstances of the offense and you look at the defendant and

7    who he has been and his history will tell you exactly who he's

8    going to be, and that's a dangerous person.  Every single one

9    of the convictions, almost every single one of the convictions

10   that the defendant has in his background are violent.

11       This is an individual who doesn't commit one violent

12   action.  He commits multiple violent actions towards

13   individuals.  The conspiracy to commit murder started out as a

14   solicitation of murder because he hired someone to go and kill

15   another person.

16       The home invasion he actually went in and struck

17   someone in the head and kicked them.  We don't have to look at

18   the categorical approach when we look at who this individual

19   is.  We don't have to look at, well, what's the least

20   objective or what's the least qualifying thing that could

21   happen to meet these definitions.  No.  When we look at this

22   individual, the definition that we can look to is is he

23   dangerous or not?

24       Does there need to be a deterrence against him and

25   others like him?  Does there need to be a sentence that we

1    give to this defendant to ensure that the society and

2    community that he is generally in is protected from more

3    action by him?

4            When it comes down to a sentence, your Honor, we do

5    believe that the sentence that we had originally asked for

6    within the guidelines that we had asked for is still

7    appropriate, quite frankly, because his history is such that

8    it's not only just violent.  It's not only that this is his

9    first drug crime, which would -- we don't normally see with a

10   lot of individuals.

11           We see a lot of drug crimes, they get drug crimes,

12   we get drug dealers and so on.  That's not this individual.

13   We have violent after violent after violent after violent

14   action, and there's nothing else to say about this individual

15   other than, quite frankly, at this point that he is violent

16   and he's willing to do whatever it takes to continue that

17   violence as he showed even when he got into jail and continued

18   to do things that, quite frankly, were dangerous to other

19   people.

20           Your Honor, we believe that the guidelines that

21   you've laid out with the guidelines that your Honor's

22   determined to ensure a guideline sentence would be appropriate

23   of 210 months.  That is the top of his guidelines.  We

24   believe, based on his history, that's appropriate.

25           Quite frankly, I think that if your Honor were to

1   find a variance and vary upward, it would also be appropriate

2   based on his incredibly dangerous history, an individual who

3   takes matters into his own hands at each and every turn, which

4   is exactly what happened in his escape case.

5          We believe that another 10 to 15 years of supervised

6   release, the longer it would entail, the better, quite

7   frankly, because this is an individual who has shown time and

8   again that he will recommit offenses regardless whether he's

9   on supervised release or even if he's in jail.  So with that,

10  your Honor, we would ask for a top of the guideline sentence

11  as your Honor has determined followed by a lengthy supervised

12  release period.  Thank you.

13         THE COURT:  Thank you very much.

14         Mr. Bryning?

15         MR. BRYNING:  Thank you, your Honor.  May it please

16  the Court and counsel?

17         THE COURT:  Yes.

18         MR. BRYNING:  Mr. Bull is 41 years old.  He's almost

19  42.  He was a drug user as well as a drug seller.  I don't

20  think anyone knows how bad drug addiction and how poisonous

21  drugs are than he does.  It's destroyed his family.  It's

22  destroyed his life.  Did he choose to go down this path?  I

23  mean, I don't know.

24         He probably made a lot of bad choices.  I think when

25  someone's mother and father are both drug addicts and he's

1  neglected and there's really no one else to help, you're gonna

2  make a lot of bad choices, and I think it's important under

3  the 3553(a) factors to look at the person and not just their

4  criminal history, and I know the presentence report lays out

5  pretty much every bad thing a person's ever done in their life

6  in terms of criminal record and it's written by the probation

7  office.

8         It's supported by the Government, and I understand

9  the Government's role is to point out bad things and advocate

10  for high sentences.  The Government is given a lot of power,

11  especially in federal court.  They're given a lot of power and

12  a lot of discretion, and they exercise that in different ways,

13  and in this case you see everything being pulled out to

14  justify a higher sentence in this case.

15         You see prior convictions being used to try to

16  increase the statutory mandatory minimum.  That was

17  successful.  His minimum after your ruling is 15 years.  The

18  Court can't go below that.  You see it in terms of, you know,

19  guideline calculations.  The Government sought 262 to 327

20  months.  Based upon your ruling, the guideline's different.

21  The Government's still seeking that high guideline sentence

22  that they were before.

23         But with that kind of great power also comes great

24  responsibility, and when you look at his life, which is not

25  just an excuse, saying, oh, well, you should feel sorry for

1    him, I'm not asking for you to feel sorry for him any more

2    than you should view him as a really bad person, a bad violent

3    person.

4          I'm not asking that you should view him as a

5    sympathetic person either, but I think in the federal

6    system we try to look at the whole person.  We try to look

7    at their history and characteristics, and the history and

8    characteristics don't just end at somebody's criminal

9    convictions or what's the worst thing they can put down on

10    paper about him.

11          The history and characteristics include what it is

12    that happened to that person throughout the course of their

13    life that caused them to be here now in a federal court

14    charged with a very bad crime facing a lot of years, frankly,

15    most of his productive years in prison and to decide after

16    balancing those what sentence is sufficient but not greater

17    than necessary to serve all those purposes of sentencing.

18          It's a tough job, but that's the federal sentencing

19    job.  I think it's almost easier to say, well, the guidelines

20    say this so he's gonna get this.  That system was done away

21    with with Booker.  Now it's the mandatory minimum and then

22    what's sufficient but not greater than necessary, and in this

23    case you see that Mr. Bull had a horrific upbringing.  I don't

24    think there's any question about that.

25          Both parents are addicts.  He was subject to

1    neglect, probably abuse.  I mean, he can't change those
2    elements of his history, but they can be considered.  It's
3    very unusual -- and one of the things that jumped out to me in
4    reading his presentence report is that it's very unusual that
5    someone who started using methamphetamine at the age of 14,
6    that's paragraph 88, has never had drug treatment.
7          Hopefully he will have access to that in the Bureau
8    of Prisons.  We're requesting a judicial recommendation for
9    the RDAP program.  I don't think, based upon -- I don't know
10   if he'll receive credit for it or not, but he wants that
11   treatment, and I think it's high time if not past time for him
12   to get some significant drug treatment that means something.
13         So originally what we were asking for in our
14   commentary was a 10-year sentence.  That hasn't really
15   changed.  I think that would be sufficient but not greater
16   than necessary.  I understand that it's impossible for you to
17   enter that sentence, but I think 15 years is the next best
18   thing, I guess, the Court could do.
19         And I don't want to repeat some of the arguments
20   that I already made with the -- in regard to our objections in
21   regard to our motion, but this is not a high-level drug
22   dealer, and the actual meth was meant to get high-level drug
23   dealers.  This is a guy who was dealing rock salt in one of
24   the two controlled buys that is the subject of this
25   prosecution, so he's not a kingpin.

1           Enhancement such as 851, career offender, even that
2   distinction between actual meth and mixture are somewhat
3   inappropriate in this case.  This is 72.6 grams of
4   methamphetamine.  Not every drug case merits a sentence of 262
5   or as high of a sentence as you can give a person, especially
6   when you consider that it costs over $40,000 a year to
7   incarcerate somebody in the Federal Bureau of Prisons.
8           That's necessary at times, but in this case you
9   actually see glimmers of hope in this person.  If you just
10  looked at his criminal record and said, well, you know, he's
11  done bad things, he's been convicted of the state crimes.
12  Without looking at those, I think that does a disservice to
13  Mr. Bull, and one of those glimmers of hope I see in the
14  presentence report is paragraph 95 through 97.
15          Those are his job attempts.  He had a job as a
16  junker.  He had a job in a tire place.  He had another -- for
17  a short period of time a job at another place for another
18  short period of time, but he was capable of going out and
19  trying to earn a legitimate living.
20          I think that shows some hope.  I think another thing
21  that jumps out is that paragraph 83 where although he'd been
22  diagnosed with ADHD and anxiety, he was placed on Gabapentin
23  when he was in jail, and Gabapentin seemed to make a
24  difference to him but then he stopped taking it or it was no
25  longer available to him.  I don't know which it was.

1    What's surprising to me is he never received a

2 diagnosis of post-traumatic stress disorder because looking at

3 his family history, what he's been through, it's surprising to

4 me that that diagnosis was not made as well.  So he's got some

5 hope.  You start looking then at, well, what has he actually

6 tried to do in life?

7    Has he ever really tried to do anything positive

8 with his life or has he just been out being a bad guy the

9 entire time?  And I think the presentence report does show

10 some of the things he's done that have been good and attempts

11 to do good that show that he is worthy of a sentence that

12 doesn't just throw away the rest of his life.

13    One of those things is -- it mentions in the report

14 that the children were left to care for themselves.  That's

15 paragraph 77, the fourth sentence.  Paragraph 92, he did get a

16 GED, but then paragraph 93 you see that he attended some

17 college and got certificates in custodial automotive repair

18 and you look a little further and see that he actually

19 graduated with honors.

20    This is strange because this is a person that

21 actually does have some potential, maybe if they weren't a

22 drug addict.  Maybe if they were properly medicated for their

23 psych disorder, maybe if they grew up under different

24 circumstances.  I don't know, but for whatever reason this

25 person actually does have the potential to do well, to lead a

1    law-abiding life and support themselves.

2          Then paragraph 94, you see that he again attempted

3    college and got -- for welding for a short period of time but

4    this shows another attempt to aim himself in the right

5    direction.  His writings that were sent to the Court, his --

6    he can write.  He wants to write, and people feel motivated by

7    some of the things he's written.

8          His sister wrote a letter that certainly says that

9    she motivated -- that she was motivated by him.  She's

10   attending New Hampshire College online and she's about to get

11   her Bachelor's of Science in psychology, I think it was, and

12   she wrote a letter saying how she was motivated by her brother

13   and that he's a motivational figure in her life.

14         That's something positive that can be said for Mr.

15   Bull, so he's capable of learning.  He has mental health

16   issues.  He has drug addiction issues and a history of

17   neglect.  It's his sister, Angie.  She calls him an

18   inspiration.  Other family members care about him.  He's lost

19   quite a few of them, mother, father, brother, but there are

20   people out there that care about him, and he does want to do

21   some positive things with his life.

22         So I'd just ask the Court to sentence him to the

23   mandatory minimum in this case, and he's gonna be on

24   supervised release.  If he steps one toe out of line, I'm sure

25   he'll be pulled back into court and sentenced to prison again.

1    Hopefully that won't happen.  He seems to have learned
2    something from this experience, and hopefully he'll get the
3    treatment that he needs and get on the right track, but I
4    would ask for a sentence of 15 years is the lowest sentence
5    this Court can give based upon your ruling, and that's the
6    request of the defense, your Honor.
7            THE COURT:  Thank you very much.
8            MR. BRYNING:  I know Mr. Bull would like to address
9    the Court as well.
10           THE COURT:  Wonderful.  So Mr. Bull, this is now
11   your opportunity to address the Court if you so wish.  Your
12   attorney has spoken on your behalf so you don't have to, but
13   if you would like to make a statement, this is your time to do
14   so.
15           THE DEFENDANT:  Yes.
16           THE COURT:  You can come on up here.  That's fine.
17           THE DEFENDANT:  Your Honor, I've written this letter
18   fifty times and changed it over a hundred.  I've tried to
19   argue my innocence, but I'm not innocent.  I've written
20   letters trying to be manipulating but that's not me or who I
21   am.  I even went out on a limb and wrote something I thought
22   you'd want to hear.  Did I mention you look nice today?
23           None of them have any meaning to me other than it
24   just being another letter.  That was the old me hiding in a
25   protective identity I created as a child, a tough young boy

1    with no weaknesses.  Today I sit here with no shame and admit

2    in a courtroom full of strangers I'm a strong man with lots of

3    weaknesses.

4            I'm an addict to a lifestyle I grew up seeing,

5    drugs, abuse, neglect and crime.  Nothing I ever wanted but

6    everything I always got.  I dream of breaking that cycle so my

7    kids would never see or go through some of the stuff I had to

8    go through.  I dream that when they dream, their dreams will

9    all come true.  I picture a world with no racial

10   discrimination, child abuse, bullying and communities that

11   thrive on helping build, not destroy, each other's

12   personalities.

13           I sat in jail during the time where we all needed

14   each other.  COVID 19 was unpredictable, stealing the health

15   of our loves ones and killing the innocent.  I prayed so many

16   times to be the next victim.  The lockdowns, days, months of

17   isolation just became too much, a punishment to all of us I

18   just couldn't understand.

19           No contact with the outside world and the unknown in

20   my family's safety and my mind in a strange place.  Then the

21   call came that my mom had OD'd.  A few months later my brother

22   passed away with medical neglect in the county jail.  I wasn't

23   there for neither one of them.  I didn't even get to say a

24   respectable good-bye.

25           I was totally defeated and found no purpose in life.

1    Then out of the blue I told myself it was time.  I never felt
2    so strong.  I never took the time to really explore my own
3    mind.  When I did, there I was just standing there thinking,
4    I'm glad you finally found me.
5           Since then I discovered a creative writer inside of
6    me, offering inspirational stories, love stories, support
7    stories, self-help books and a program called Change in
8    Directions that helps the youth, ex-offenders, low income and
9    law enforcement to all come work together.  Nothing that will
10   change the world but something that will change my world, a
11   future worth fighting for.
12          I accept full responsibility for my actions, and no
13   matter the overcome of today, I will use this time to the best
14   of my ability and reform myself so upon my release the real me
15   will walk out leaving the old me trapped in a cell.  I ask you
16   to grant me leniency so that my three-year-old daughter still
17   has a chance of having a father, that I still have a chance to
18   show my family, this Court and myself that it's never too late
19   to do something that we can all be proud of.  Thank you.
20          THE COURT:  Thank you very much, Mr. Bull.
21          I'm going to take a short recess, and then I'll come
22   out to impose the sentence.  Thank you very much.
23          (Break taken from 2:46 p.m. to 3:04 p.m.)
24          THE COURT:  Thank you.  You may be seated.  I've had
25   the opportunity to consider the arguments of counsel, the

1    statement in allocution, the character reference letters, the

2    defendant's commentary, the Government's commentary, and in

3    looking at this case, I've considered all of the sentencing

4    factors contained within Section 3553(a), particularly the

5    nature and circumstances of the offense as well as the history

6    and characteristics of the defendant in this case.

7    When I'm looking at this, I see that obviously, Mr.

8    Bull, you are a relatively young individual. You're 41 years

9    old. However, when I'm looking at your criminal history and

10    what your lifestyle has been for the remainder of -- for your

11    adult life coming up to here, it has been involved in the

12    criminal justice system.

13    It has been either in prison or facing further

14    charges, and I do look at the nature of what those offenses

15    were. This isn't a situation where it was, you know,

16    possession of drugs or selling drugs. I mean, there were

17    violent offenses and so -- and I've looked at the period of

18    imprisonment that you've already been sentenced to and that

19    you've had to go through, and it does not appear as though the

20    imprisonment stops you from the conduct when you are released.

21    So I'm looking at that.

22    I am considering you as a whole person today. It is

23    not just your criminal history, but it is something that

24    informs me as to your likelihood to reoffend as to protecting

25    the public from further danger from your actions, and I do

1 have to consider both of these cases in conjunction with one
2 another and the idea that you were in custody on a charge, a
3 federal charge, and you then picked up another case of
4 escaping the jail in which you were being held on pretrial.

5 And that's not something that I can overlook for
6 purposes of your likelihood to reoffend and what has happened
7 to get you there.  Now, that doesn't mean that I'm not looking
8 at, and I have, I've considered your history, meaning your
9 upbringing as a child, and it is true.  You had a traumatic
10 childhood.  You don't report enduring any abuse but certainly
11 neglect.

12 You did not have parents -- and I hate when I go
13 through this with defendants because you know your history
14 much better than I do, but I say these things in court so you
15 know that I've considered them, is that you obviously did not
16 have the upbringing or individuals in your life to show you
17 the positive way or the -- I hate to say right or wrong, but
18 any positive influences in your life, as what I can tell, is
19 that you were neglected and you were left to take care of
20 yourself because of the addiction of your parents, and that is
21 something that informs your behavior going forward and I
22 believe it did in this case.

23 That is something I've considered.  I've also
24 considered your substance abuse, and I agree with Mr. Bryning
25 that it is -- it's rather rare that an individual who has been

1    in the system, as we will say it, for as many times as you

2    have has not actually ever went through drug treatment and so

3    I think drug treatment is absolutely necessary.

4           It's something I am going to recommend, and I hope

5    that you take it seriously because I did hear you in your

6    statement and allocution that you said now you see, right?

7    Now you see the man that you want to be, and it has definitely

8    not been the man that you have been, and you recognize that,

9    but those decisions are easier when you're clear headed, when

10    you aren't under the influence of drugs.

11           So you can make that decision here because,

12    presumably, you haven't taken drugs in quite some time, and

13    you just have to remember the clarity that you feel right now,

14    and what you want to be as a person once you are released from

15    custody is informed by the fact you are not taking drugs and

16    so I hope that you take the Residential Drug Abuse Program

17    seriously and you commit to that sobriety or, unfortunately,

18    at least based on your history and also just what happens not

19    just to you but to others, if you go back down that road of

20    drugs, you're just gonna end up back not in this court maybe

21    but definitely a court and so that's something that you are in

22    control of and you can make that decision going forward.

23           It's a hard road.  It's not easy.  I'm not saying it

24    is, because it's very difficult, but you've already taken the

25    first steps of it.  You've gotten through that part, so I'm

1   hoping that you take that seriously going forward.

2          Now, that deals with your mental health.  I

3   understand from the Presentence Investigation Report that you

4   do suffer from anxiety as well as some other mental health

5   concerns and that hopefully you can address those and receive

6   any mental health counseling or take the appropriate

7   medications that are prescribed or what is necessary for your

8   current mental health.

9          Physical health, it appears as though you're in good

10  physical health, and that's a good thing for going forward.

11  I've also considered your employment history.  I would agree

12  with your counsel that you have the ability to hold down a

13  job.  You have the, I guess -- you wanted to for a period of

14  time but not a significant period of time and so for going

15  forward, I do hope that once you are released from custody,

16  that you continue down a path of what you've said you want to

17  do, which is to gain employment.

18         You are educated.  You have this talent in creative

19  writing that can impact others, and maybe you can be able to

20  make an income off of that as well as having stable employment

21  on a daily basis.  That is important.  It is not something

22  that you particularly have had throughout your adult life, and

23  that's a change that I hope you make, but these are all

24  circumstances that I have taken into consideration when

25  fashioning what would be the appropriate sentence in this

1    case.

2            And I've considered, as I've indicated, the -- the

3    nature of the offense, of both offenses, the fact that you

4    were selling -- it's a large amount.  I mean, you're being

5    held accountable for 24,358 kilograms of converted drug

6    weight.  I understand not all of it was ice.  Only 72.6 grams

7    was ice methamphetamine, and the other 11,453 grams of

8    methamphetamine was a mixture containing it.

9            That doesn't take away from the fact that you were

10   absolutely dealing, and in large quantities, so I don't think

11   you're a drug kingpin, but I do think that you have a history

12   of this, and this is something that I have to take into

13   consideration along with the circumstances of the offense

14   contained in the 21 case, which I've already addressed.

15           And so when I'm looking at mitigation, when I'm

16   looking at the aggravation, I do consider also the home

17   invasion.  Now, as my ruling was that that wasn't going to be

18   included for purposes of the 851, however, it is something

19   that I have to take into consideration when looking at the

20   type of criminal conduct.

21           That was not just a situation that you invaded that

22   home.  You did use force, and you did hurt the individual

23   within that home, and that is something that I am considering

24   as part of my sentence here today.

25           So taking all the relevant factors into

1   consideration, I find that the following sentence is

2   sufficient but not greater than necessary to comply with the

3   sentencing purposes set forth in 18 United States Code Section

4   3553 and pursuant to the Sentencing Reform Act, I find that

5   the defendant, Randy Bull, is hereby committed to the custody

6   of the Bureau of Prisons for a period of 210 months in the

7   20-cr-30046 on Count 1.

8         He is also committed to BOP for a period of 12

9   months on Counts 1, 2, 3, and 7 in the 21-cr-30009, which

10   shall run concurrently to each other on those counts and

11   consecutive to the sentence imposed in the 20 case.

12         Now, I find that this sentence -- obviously, I'm

13   accepting the 11(c)(1)(C) that was agreed upon between the

14   parties.  I'm accepting that in the 21 case, and I find that

15   this sentence adequately reflects the seriousness of the

16   offense, promotes respect for the law, provides just

17   punishment, protects the public from further crimes of Mr.

18   Bull and hopefully affords adequate deterrence.

19         I want to make sure that in this you understand that

20   I have determined this sentence after considering not only the

21   guideline range that I found today based on the rulings but

22   also the prior guideline range when considering both of the

23   convictions, and I find that if I had included a home invasion

24   offense and the career offender status, the 210 months that I

25   am ordering here today would have been my sentence under the

1    other guideline as well.

2              This is appropriate, and so I am not just finding

3    this based on the fact that I made those rulings today and

4    it's within the guideline range.  I believe that this is the

5    appropriate sentence under either guideline range.

6              It is also recommended that the defendant serve his

7    sentence in a facility that will allow him to participate in

8    Residential Drug Abuse Program and to maximize his exposure to

9    educational and vocational opportunities.

10             It's my understanding, please correct me if I'm

11   wrong, Mr. Bryning, but your client is requesting that he

12   serve his time in a facility as close to Southern Illinois as

13   possible.  Is that correct?

14             MR. BRYNING:  Yes, your Honor.

15             THE COURT:  All right.  Thank you very much.

16             Now, before I turn to the supervised release, I

17   believe I did state the incorrect supervised release statutory

18   term.  I believe I said 5 years, and it should have been 10

19   years.

20             Is that correct, Mr. Murphy?  I want to make sure I

21   correct that.

22             MR. MURPHY:  That's correct.

23             THE COURT:  All right.  Now, considering that,

24   following your release from custody, sir, you shall serve a

25   10-year term of supervised release in the 20 case and 3 years

1    on each count in the 21 case concurrently to each other as

2    well as concurrent to the 20 case.

3            I believe this term of supervised release is

4    sufficient but not greater than necessary to help you

5    transition back into society, deter you from committing future

6    crimes and it will also allow the defendant to be monitored to

7    ensure public safety and provide him with the needed resources

8    to assist in his rehabilitation.  I think that's important.

9            While on supervised release, you shall not commit

10   another federal, state or local crime, you shall not

11   unlawfully possess a controlled substance.  You shall submit

12   to one drug test within 15 days of release from imprisonment

13   and at least two drug tests thereafter as directed by the

14   probation officer.

15           Pursuant to Title 34, United States Code Section

16   40702, you shall cooperate in the collection of DNA.  You

17   shall -- I'm sorry.  That was -- sorry.  You shall cooperate

18   in the collection of DNA as directed by the probation officer

19   of the Bureau of Prisons.

20           In addition to those mandatory conditions that I've

21   just outlined to you, sir, you are also and I am imposing and

22   you've agreed to the discretionary conditions that we

23   discussed earlier today, and one of those conditions requires

24   that within 72 hours of your release from custody, you must

25   report in person to the probation office in the district in

1  which you are released.

2  I find that you do not have the ability to pay a

3  fine.  No fine is imposed.  A special assessment of $100 in

4  the 20 case is ordered, and $400 in the 21 case is imposed and

5  payable immediately.

6  Can we for a moment address the restitution?  Is the

7  restitution still being requested?

8  MR. JACOBS:  It's already been paid, your Honor, and

9  it would be joint and several.  I don't believe we can request

10  it if it's already --

11  THE COURT:  So it's been paid in full.  Is that

12  correct?

13  MR. JACOBS:  I'm not certain.  I think probation can

14  confirm that.

15  MR. MURPHY:  Yes, Judge.

16  THE COURT:  Okay.  Based on the fact it has been

17  paid in full, I'm not going to order restitution in this case,

18  and I believe that should address all of the remaining issues.

19  Mr. Bryning, do you have any legal objections to the

20  sentence I'm imposing other than what you've already

21  identified or do you request any further elaborations of my

22  reasoning under 3553(a)?

23  MR. BRYNING:  Judge, I understand you're using -- I

24  think, if I'm not mistaken, the 12-month sentence that was

25  agreed in the second agreement and therefore if you're --

1   based upon your ruling of the 1 --

2           THE COURT:  It's 210 plus 12.

3           MR. BRYNING:  You said concurrent.

4           THE COURT:  Mr. Jacobs was giving me the look too.

5   I said 210 in the 20 case, and I said 12 months because on all

6   of the counts they have to be concurrent with each other in

7   the 21 case, but the 21 case sentence is going to be

8   consecutive to the 20 case.  Yes.

9           MR. BRYNING:  Okay.  Thank you, Judge.

10          THE COURT:  That's not a problem.  I'm glad we made

11  that clarification.

12          MR. BRYNING:  The only other clarification I would

13  want you to make, your Honor, is that we have not waived any

14  issues.  I know the Court at one point asked whether we agreed

15  with the ruling regarding the two priors, and I said yes but

16  that should have been yes, based upon the Court's ruling.

17          THE COURT:  Yes.  I mean, I'm not taking that you

18  have -- I mean, Mr. Jacobs --

19          MR. JACOBS:  That's how I understood it as well,

20  your Honor.

21          THE COURT:  Not a problem.  All right.

22          Any objection, Mr. Jacobs?

23          MR. JACOBS:  No objection, your Honor.  One

24  clarification.  I mean, obviously, again, based upon the

25  ruling, no objection to what's been done but obviously reserve

1   for the ruling itself.  I did have one question of

2   clarification.  Would your Honor -- if you had not found the

3   851 enhancement, if you had not found conspiracy to commit

4   murder to be an 851 enhancement, would you still have found

5   this to be the appropriate sentence?

6           THE COURT:  Under either scenario.  Under all of

7   those scenarios I believe this is the appropriate sentence,

8   and I have considered the different ranges that would have

9   been put in place when fashioning this sentence, so I do

10  believe the 210 is the appropriate sentence.  It then --

11          Mr. Bryning, have I addressed all matters in

12  mitigation?

13          MR. BRYNING:  Yes, Judge.

14          THE COURT:  All right.  So the sentence I have

15  stated is the sentence that will be imposed.

16          And Mr. Bull, it is now my duty to inform you that

17  you have the right to appeal the sentence imposed here today.

18  If you wish to do so, you must file a form called a Notice of

19  Appeal.  That must be filed within 14 days of entry of

20  judgment in this case or within 14 days from the Government

21  filing a notice of appeal.

22          And if you are indigent or without money, an

23  attorney would be appointed to handle your appeal without

24  charge, and a transcript of the Court hearings held in this

25  matter would be prepared and given to you without charge for

1  your appeal.  I believe that is all issues that need to be
2  addressed here today.
3          Mr. Bull, good luck to you.  You are remanded to the
4  custody of the United States Marshals.
5          Thank you very much, everyone.
6          Hold on.  Is there a count that needs to be
7  dismissed in the 21 case?
8          MR. JACOBS:  There is, your Honor.
9          THE COURT:  Okay.  I'm sorry.  We have to go back on
10 the record really quick to dismiss a count.
11         MR. JACOBS:  I don't know what count that is, your
12 Honor.  He pled to Count 1.
13         THE COURT:  He pled to 1, 2, 3, and 7.
14         MR. JACOBS:  I believe it's 5 on the 21.
15         THE COURT:  Government's moving to dismiss Count 5?
16         MR. JACOBS:  That's correct, your Honor.  I believe
17 that's correct.
18         THE COURT:  Okay.  That will be dismissed.  Count 5
19 will be dismissed.  Thank you very much.
20         MR. JACOBS:  Thank you, your Honor.
21         (Wherein the hearing adjourned at 3:20 p.m.)
22
23
24
25

1                         REPORTER'S CERTIFICATION

2

3          I, Debra Thornburg, a Certified Shorthand Reporter of the

4     State of Iowa and Federal Official Realtime Court Reporter in

5     and for the United States District Court for the Central

6     District of Illinois, do hereby certify, pursuant to Title 28,

7     United States Code, Section 753, that the foregoing is a

8     correct transcript of the stenographically reported

9     proceedings held in the above-entitled matter and that the

10    transcript page format is in conformity with the regulations

11    of the Judicial Conference of the United States.

12

13                              /s/ Debra M. Thornburg

14                              Debra M. Thornburg
                                Official Court Reporter
15                              United States District Court
                                Central District of Illinois
16

17                              Date:  January 22, 2024

18

19

20

21

22

23

24

25